William A. GALLUCCI

v.

David A. BRINDAMOUR, Treasurer of
the Town of West Warwick.

No. 82–140–Appeal.

Supreme Court of Rhode Island.

June 28, 1984.

John S. Brunero, Brunero & Brunero,
West Warwick, for plaintiff.

R. Daniel Harrop, Town Sol., West War-
wick, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal
from a judgment of the Superior Court
granting to the plaintiff vacation and sick
benefits to which he would have been enti-
tled under a contract between the town of
West Warwick (town) and the International
Brotherhood of Police Officers, Local No.
312 (the brotherhood), had he been covered
thereby. We reverse. The facts of the
case as agreed by the parties are as fol-
lows.

The plaintiff became a member of the
West Warwick police department in 1948.
After having served in various capacities
and at various ranks, he was appointed
chief of police June 8, 1971. He remained
in that office until his retirement on Febru-
ary 9, 1979. It is also agreed that plaintiff
during his tenure as chief of police was not
a member of the brotherhood and did not

pay dues or any equivalent sums to that agency. The brotherhood had been certified as the bargaining representative of all members of the West Warwick police department from "patrolman up to and including the chief." This certification was promulgated by the State Labor Relations Board on October 23, 1970, prior to the appointment of plaintiff as chief of police. From and after the date of plaintiff's appointment, each agreement between the brotherhood and the town specifically excepted the chief of police from the terms and conditions of the agreement. This exception was carried over to the final agreement entered into just prior to the retirement of plaintiff in 1979 at the age of fifty-four. At that time had plaintiff been covered by the collective-bargaining agreement, he would have been entitled to the sum of $9,659.11 for thirty-nine unused vacation days and/or personal days, plus one hundred days of sick time. The trial justice entered judgment in this amount together with interest and costs.

In his judgment, the trial justice relied upon G.L.1956 (1979 Reenactment) §§ 28–9.2–3 and 28–9.2–5. Section 28–9.2–3, in pertinent part, reads as follows.

"(a) The term policemen shall mean the full-time police from the rank of patrolman *up to and including the rank of chief,* including policewomen of any particular police department in any city or town within the state." (Emphasis added.)

Section 28–9.2–5 states:

"Recognition of bargaining agent.— The organization selected by the majority of the policemen in any city or town shall be recognized by such city or town as the sole and exclusive bargaining agent *for all of the policemen of the city or town police department* unless and until recognition of such organization is withdrawn by vote of a majority of the policemen of said city or town. The labor organization, or city, or town, may designate any person or persons to negotiate or bargain on its behalf; provided, however, that the person or persons so designated shall be given authority to enter into and conclude an effective and binding collective bargaining agreement." (Emphasis added.)

There is no question that these sections considered together are plain and unambiguous. The certified representative is the sole and exclusive-bargaining agent for all of the policemen of a city or town including the chief of police. The sole question before us is whether the parties for whose benefit this statute was enacted have the power to waive those benefits by entering into a contract that specifically excludes the chief of police. It is apparent from the record that the series of contracts excluding the chief of police were entered into with the assent of plaintiff, the brotherhood, and the town.

■ Generally, a party or parties for whose benefit a right is provided by constitution, by statute, or by principles of common law may waive such right, regardless of the plain and unambiguous terms by which such right is expressed. *See, e.g., Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274, 279–80 (1969) (right to jury trial, to presumption of innocence, and other rights waived by plea of guilty in criminal case); *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966) (privilege against self-incrimination and right to remain silent); *Gideon v. Wainwright,* 372 U.S. 335, 339–40, 83 S.Ct. 792, 794, 9 L.Ed.2d 799, 802 (1963) (right to counsel); *Plouffe v. Goodyear Tire & Rubber Co.,* 118 R.I. 288, 292–93, 373 A.2d 492, 494–95 (1977) (statute of limitations); *Hattie Carnegie Industries, Inc. v. Lopreato,* 114 R.I. 319, 327–28, 333 A.2d 145, 150 (1975) (rights provided by contract).

In the case at bar, the statutory right set forth was designed for the benefit of three parties. First, the collective-bargaining agent was clearly given the right to bargain on behalf of all policemen after having been chosen by a majority of such policemen to do so. Second, any person who

came within the definition of "policeman" was given the right to be represented by such bargaining agent. Third, the town derived the benefit of the statute as a whole in achieving stability and tranquility in its police department. The only questions presented on this appeal are whether these parties had the ability to waive such rights either implicitly or explicitly by their course of conduct and whether such a waiver in fact took place.

We have previously held in *Berthiaume v. School Committee of Woonsocket*, 121 R.I. 243, 397 A.2d 889 (1979), that "when a statute creates a private right for the public good, the donee of that private right lacks the power either to waive that right or to nullify it by private contract." *Id.* at 250, 397 A.2d at 894. In that case we held specifically that a substitute teacher could not agree to accept compensation at a lower per diem rate than that provided by statute. We further determined that the statute that established the minimum compensation was enacted in order to " 'provide a quality education for all Rhode Island youth * * *,' clearly a public purpose." *Id.* at 251, 397 A.2d at 894.

 In the case at bar, it is highly debatable that including the chief of police in a bargaining unit is designed to achieve the public good. It may indeed result, in particular instances, in a severe conflict of interest between the chief of police, whose job it is to manage the department, and the members of the union who are authorized to bargain on his behalf. In light of the strong probability that some communities and some unions will find the function of management to be virtually incompatible with membership in the bargaining agency, we are of the opinion that the Legislature did not intend to place every city and town in a situation in which the three parties for whose benefit the statute had been enacted could not waive that portion which made the chief of police a member of the bargaining unit. These circumstances, we believe, distinguish this case from *Berthiaume, supra*.

There is no question that the plaintiff, the brotherhood and the town, both explicitly and implicitly, over a significant period of time have chosen to waive the inclusion of the chief of police in their collective-bargaining contract. In our opinion, this course of conduct is now binding upon all three. They have freely and voluntarily chosen to forego whatever benefit might have accrued to any or all of them from including the plaintiff as a part of the collective-bargaining process. The plaintiff is now precluded as a result of this choice from insisting upon the benefits set forth in the contract entered into prior to his retirement.

For the reasons stated, the appeal of the defendant is sustained, the judgment of the Superior Court is reversed, and the papers in the case may be remanded to the Superior Court with instructions to enter judgment for the defendant.